## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**SPIRO STAFILATOS,**
c/o Hansel Law, P.C.
2514 North Charles Street
Baltimore, Maryland 21218

   *Plaintiff,*

  vs.

**MONTGOMERY COUNTY,**
**MARYLAND**
**Serve:** Edward B. Lattner
   Chief, Division of Gov. Operations
   Office of the County Attorney
   101 Monroe St., Third Floor
   Rockville, Maryland 20850

**CPL. JAMES SHABELSKI, #1466**
*Individually and in His Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
   Detention Center
   1307 Seven Locks Road
   Rockville, Maryland 20854

**SGT. BRANDON WARD, #1881**
*Individually and in His Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
   Detention Center
   1307 Seven Locks Road
   Rockville, Maryland 20854

**CPL. ROBERT HADLEY, #1107**
*Individually and in His Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
   Detention Center
   1307 Seven Locks Road
   Rockville, Maryland 20854

Case No.: _____

*Jury Trial Demanded*

**PFC FRED SIDNEY, #1850**
*Individually and in His Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
      Detention Center
      1307 Seven Locks Road
      Rockville, Maryland 20854

**PFC BREYANNA THOMPSON, #1895**
*Individually and in Her Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
      Detention Center
      1307 Seven Locks Road
      Rockville, Maryland 20854

**PFC DOMINIQUE BERRY, #1952**
*Individually and in Her Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
      Detention Center
      1307 Seven Locks Road
      Rockville, Maryland 20854

and

**PFC DWAYNE CARTER, #1532**
*Individually and in His Official Capacity*
*As a Correctional Officer*
**Serve:** Montgomery County
      Detention Center
      1307 Seven Locks Road
      Rockville, Maryland 20854

        *Defendants.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Comes now the Plaintiff, by and through undersigned counsel, Cary J. Hansel, and the law firm of Hansel Law, P.C., and sues the above-named Defendants, in support thereof stating as follows:

## INTRODUCTION

1.      This lawsuit arises from the harassment and injury suffered by Plaintiff while he was at the Montgomery County Detention Center for booking following an arrest earlier that day, in the care and custody of the Defendants.

2.      Plaintiff was being held in the commitment tank at MCDC following an arrest earlier that afternoon. Defendant Shabelski decided to move Plaintiff to another section of the facility for further processing even though Plaintiff was still using the phones in the commitment tank to contact someone to pay his bail. When Defendant Shabelski ordered Plaintiff to leave the commitment tank, Plaintiff requested to use for the phone for a little longer. Defendant Shabelski refused and moved to forcibly remove Plaintiff from the tank.

3.      As Defendant Shabelski moved to forcibly remove Plaintiff from the tank, he was joined by six other officers who worked together to restrain Plaintiff, slam Plaintiff against the wall, take Plaintiff to the floor, and immobilize him face-down on the linoleum. Despite the fact that Plaintiff was passive during the entire encounter and never posed a threat to any of the Defendants, himself, or any other person, the Defendants used excessive force against Plaintiff including Defendant Shabelski and Defendant Sidney striking Plaintiff on the head and face numerous times with closed fists.

4.      As a result of the Defendants' conduct, Plaintiff suffered and/or continues to suffer from severe headaches, generalized pain in his face and head, periorbital bruising and edema and a large contusion, and emotional pain and suffering.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Honorable Court under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States. Plaintiffs

further invoke supplemental jurisdiction of this Court to hear and decide claims arising under state law, by virtue of 28 U.S.C. § 1367.

6.      Venue is proper in this Honorable Court under 28 U.S.C. § 1391 because the parties are domiciled in Maryland, or organized under Maryland law, and the events at issue took place in Rockville, Maryland.

7.      This Complaint was filed within three years of the cause of action.

## PARTIES

8.      Plaintiff Spiro Stafilatos ("**Plaintiff**") is an adult citizen of the State of Maryland. At all times relevant to this complaint, Plaintiff was in the care and custody of the Defendant Montgomery County, Maryland at Montgomery County Detention Center, located at 1307 Seven Locks Road, Rockville, Maryland 20854 ("**MCDC**").

9.      Defendant Montgomery County, Maryland ("**Defendant County**") is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution. Defendant County oversaw and operated MCDC through the Montgomery County Department of Correction and Rehabilitation. It was responsible for and had the duty to provide care, safekeeping, and protection to all persons held within the correctional system for the county.

10.     Defendant Cpl. James Shabelski, #1466 ("**Defendant Shabelski**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of his employment and under the color of state law.

11.     Defendant Sgt. Brandon Ward, #1881 ("**Defendant Ward**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of his employment and under the color of state law.

12.     Defendant Cpl. Robert Hadley, #1107 ("**Defendant Hadley**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of his employment and under the color of state law.

13.     Defendant PFC Fred Sidney, #1850 ("**Defendant Sidney**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of his employment and under the color of state law.

14.     Defendant PFC Breyanna Thompson, #1895 ("**Defendant Thompson**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of her employment and under the color of state law.

15.     Defendant PFC Dominique Berry, #1952 ("**Defendant Berry**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of her employment and under the color of state law.

16.     Defendant PFC Dwayne Carter, #1532 ("**Defendant Carter**") is an adult resident of the State of Maryland, and at all times relevant hereto was a correctional officer for Defendant County at MCDC, acting within the scope of his employment and under the color of state law.

## FACTS COMMON TO ALL COUNTS

17.     On April 1, 2020, at approximately 5:00 p.m., Plaintiff was arrested at his home by the Montgomery County Sheriff's Office in response to an outstanding arrest warrant.

18.     During the course of the arrest, Plaintiff was bitten by a dog used by the Montgomery County Sheriff's Office. Once he was in the sheriff's custody, the sheriffs transported Plaintiff to Shady Grove Hospital for treatment for the dog bite. After Plaintiff was treated, the

sheriffs transported him to the Central Processing Unit ("**CPU**") at MCDC for booking and arraignment.

19.     Shortly before midnight, Plaintiff was being held in the commitment tank as he made calls to try to contact someone to pay bail. Plaintiff had been arrested with his girlfriend, who was being held at another area in the CPU.

20.     At the time Plaintiff was being held in the commitment tank, Defendant Shabelski and Defendant Thompson were stationed as Hallway Officers in the CPU. Defendant Ward was stationed as the Senior Floor Officer. Defendant Carter, Defendant Hadley, and Defendant Sidney were all stationed as Processing Officers.

21.     As Hallway Officers, Defendant Shabelski and Defendant Thompson were responsible for ensuring the welfare and safety of the arrestees being processed in the CPU.

22.     Defendant Shabelski made the decision to transport Plaintiff from the commitment tank in the CPU to the Receiving and Discharge area because Plaintiff had been yelling while inside the tank. Defendant Shabelski informed Defendant Ward of his intention to move Plaintiff then approached the commitment tank.

23.     At approximately 11:29 p.m. that night, Defendant Shabelski opened the door of the commitment tank. Plaintiff, who was standing in the middle of the tank, gestured to the phone hanging on the door and told Defendant Shabelski that he would like to make a few more calls in an attempt to contact someone to pay his bail. Plaintiff then walked over to the phone closest to the cell door where his papers were.

24.     Defendant Shabelski refused to permit Plaintiff to continue using the phone and gestured at Plaintiff to leave the commitment tank while standing in the door of the cell.

25.     Plaintiff continued to ask for more time. Defendant Shabelski continued to refuse and entered the cell to forcibly remove Plaintiff. As soon as Defendant Shabelski entered the cell, Plaintiff, who had moved towards the center of the cell while talking to Defendant Shabelski, began to back away from Defendant Shabelski into the corner of the cell. Defendant Shabelski continued to approach Plaintiff, cornering Plaintiff and yelling at him to leave the cell while aggressively gesturing with his left arm.

26.     At this point, Defendant Thompson and Defendant Hadley approached the open cell door.

27.     Defendant Shabelski then grabbed Plaintiff by his left elbow and shoulder to forcibly remove him from the tank. Plaintiff pulled away from Defendant Shabelski, telling him "do not touch me." After pulling away, Plaintiff attempted to back away from Defendant Shabelski. Plaintiff was not even facing Defendant Shabelski at this point; Defendant Shabelski was right next to Plaintiff's left shoulder.

28.     Although Plaintiff had done nothing more than move away from Defendant Shabelski and tell Defendant Shabelski not to touch him, Defendant Shabelski claimed in a written statement that he "observed [Plaintiff's] demeanor to be threatening toward me and my fellow officers at this point as well as active resistance to being escorted to R + D," baselessly claiming that he believed Plaintiff would assault him. Defendant Ward, who later reviewed the video footage of the incident, disagreed, claiming that he believed Plaintiff had been "passive" during this interaction.

29.     Defendant Shabelski then aggressively grabbed Plaintiff's left arm again with both hands. He forced Plaintiff to turn so that Plaintiff was facing away from Defendant Shabelski and Defendant Shabelski was at Plaintiff's back.

30.     Defendant Thompson and Defendant Hadley then entered the cell. Defendant Thompson grabbed Plaintiff's lower left arm while Defendant Hadley grabbed Plaintiff's right arm with both hands. Suddenly grabbed by three officers, Plaintiff attempted to move backwards away from the officers, but he was unable to move anywhere as the officers had turned Plaintiff so that his back was to the cell wall.

31.     With all three officers grabbing Plaintiff by his arms—from the lower arm all the way to Plaintiff's armpits—the officers forced Plaintiff away from the cell wall and across the cell. One of the officers forcibly maneuvered Plaintiff by grabbing his neck or the back of his head. After slamming Plaintiff into the far wall, Defendant Shabelski pulled Plaintiff backwards by his shoulders, which caused Plaintiff, Defendant Shabelski, and Defendant Thompson to all fall to the ground.

32.     Plaintiff landed flat on his back with Defendant Shabelski's right arm across his neck. As Defendant Shabelski's arm was across his neck, Plaintiff's hands reflexively reached towards Defendant Shabelski's arm.

33.     By this time, Defendant Ward and Defendant Sidney ran in to the commitment tank.

34.     Defendant Thompson stood up, retrieved leg restraints, and restrained Plaintiff's legs.

35.     At this time there were five officers surrounding Plaintiff, who was still lying immobile on the floor. Defendant Thompson had restrained Plaintiff's legs with leg restraints, Defendant Shabelski was still lying on top of Plaintiff with his arm around Plaintiff's neck, Defendant Hadley was on Plaintiff's left side with a hand supporting Defendant Shabelski, Defendant Ward was standing near Plaintiff's head with both hands supporting Defendant

Shabelski, and Defendant Sidney was on Plaintiff's right side with his left hand restraining Plaintiff's torso.

36.     Both Defendant Shabelski and Defendant Sidney pressed Plaintiff down with their body weight. Defendant Shabelski began striking Plaintiff in his head area with his left hand. Defendant Sidney began striking Plaintiff in his face area with his right hand.

37.     While Plaintiff was immobile on the floor, Defendant Sidney struck Plaintiff more than 12 times with his right closed fist and more than four times with his left closed fist.

38.     While Plaintiff was immobile on the floor, Defendant Shabelski struck Plaintiff at least three times with his left closed fist.

39.     While Defendant Shabelski and Defendant Sidney were striking Plaintiff dozens of times with their closed fists, Defendant Hadley knelt on Plaintiff's legs.

40.     Plaintiff was struck several other times by the individual Defendants as well, including Defendant Sidney striking Plaintiff in the abdomen multiple times.

41.     In his incident report, Defendant Shabelski admitted to "deliver[ing] compliance strikes to the facial area of new lock up Stafilatos." Defendant Shabelski hit Plaintiff so many times and with so much force that Defendant Shabelski injured himself—after the incident, Defendant Shabelski "observed his right middle finger swollen." The injury was severe enough that Defendant Shabelski left his shift and drove himself to the hospital for medical treatment.

42.     Defendant Berry and Defendant Carter also responded to the scene and assisted in aggressively and forcibly restraining Plaintiff, including placing Plaintiff in handcuffs.

43.     Defendant Ward instructed another officer on scene to retrieve and restrain Plaintiff with a spit hood.

44.     Other officers and medical staff then responded to the scene to check on Plaintiff's injuries. Lt. Lisa Kidwell, one of the new officers reporting to the scene and the Shift Commander, instructed the individual Defendants to remove the leg restraints from Plaintiff. Defendant Sidney complied with Lt. Kidwell's order and removed the leg restraints.

45.     The individual Defendants then physically hauled Plaintiff to medical. At one point during the walk, in a hallway near Main Control, Plaintiff stopped walking. The individual Defendants slammed Plaintiff against the wall before bodily dragging Plaintiff through the hallways.

46.     As a result of the Defendants striking him so many times, Plaintiff's nose was bleeding and his eye was swollen shut. He suffered from severe headaches and pain in his face and head. When he was examined the following day by medical staff, Plaintiff was diagnosed with periorbital bruising and edema and a large contusion.

47.     The Defendants investigated the incident shortly afterwards. Lt. Kidwell was assigned to collect incident reports from the officers involved and review the video footage of the incident. After compiling the reports and reviewing the footage, Lt. Kidwell wrote to Defendant County staff at 1:34 a.m. on April 2, 2020 that she believed the individual Defendants used excessive force: "After reviewing the video it appears to be excessive force."

48.     After the incident, Defendant Sidney was placed on administrative leave for using excessive force.

49.     The Assistant State's Attorney investigated the incident as well but ultimately decided not to press charges against Defendant Sidney.

50.     Despite the individual Defendants continuously claiming in reports that Plaintiff was "combative," video footage of the incident demonstrates that Plaintiff was passive during the

entire incident. Plaintiff never acted aggressively towards the individual Defendants or did anything other than move away from Defendant Shabelski when Defendant Shabelski tried to forcibly remove him from the commitment tank and raise his hands towards Defendant Shabelski's arm when Defendant Shabelski was lying on top of Plaintiff with his arm across Plaintiff's neck.

51.     The Defendants have a duty to ensure the health and welfare of the detainees in their custody. The Defendants breached this duty to ensure the health and welfare of inmates within their custody when the individual Defendants negligently, and/or grossly negligently restrained Plaintiff, slammed him into a wall, aggressively took him to the floor, and repeatedly struck him with closed fists, despite Plaintiff not doing anything other than asking Defendant Shabelski for more time to use the phone.

52.     In the alternative, the Defendants intentionally and/or maliciously injured Plaintiff by restraining Plaintiff, slamming him into a wall, aggressively taking him to the floor, and repeatedly striking him with closed fists, despite Plaintiff not doing anything other than asking Defendant Shabelski for more time to use the phone.

53.     As a result of the Defendants' conduct, Plaintiff suffered and/or continues to suffer from severe headaches, generalized pain in his face and head, periorbital bruising and edema and a large contusion, and emotional pain and suffering.

54.     All allegations herein, however worded, are pled alternatively as acts of negligence, gross negligence, intent, and/or malice, as determined at trial by the jury in this matter.

### COUNT I
### CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Fourteenth Amendment

55.     Every paragraph not falling under this Count is incorporated herein by reference.

56.     Defendants engaged in an activity that violated Plaintiff's rights as protected under the Constitution of the United States, violating Plaintiff's Due Process rights.

57.     By the actions detailed herein, including, but not limited to, using excessive force against Plaintiff, Defendants deprived Plaintiff of his Constitutional rights under the Fourteenth Amendment, including, but not limited to:

      a.    freedom from imprisonment and seizure of freehold, liberty and privilege without due process, and without judgment of his peers;

      b.    freedom from the deprivation of liberty without due process of the law, and without the judgment of his peers;

      c.    freedom from the abuse of power by law enforcement and correctional officers; and

      d.    freedom from summary punishment.

58.     Plaintiff has a right to be free from summary punishment by the Defendants. This right was denied to Plaintiff when Defendants used excessive force against Plaintiff without legal cause, excuse or justification.

59.     Plaintiff has a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, his ability to be free from unlawful and unwelcome abuse and attack by the police and his ability to practice his chosen profession and earn a living thereby.

60.     Plaintiff was deprived of numerous protected property and liberty interests by Defendants.

61.     Plaintiff was afforded less process than was due under law by Defendants in depriving him of the rights in question.

62.     By the actions detailed above, Defendants deprived Plaintiff of his constitutional rights including, but not limited to, freedom from abuse of power by those acting under color of state law and authority.

63.     At all times relevant hereto, Defendants acted under color of State law and in a manner which was not objectively reasonable.

64.     Defendants had a duty to maintain security, prevent disturbances, and take reasonable measures to guarantee safety of detainees, to protect them from violence at the hands of correctional officers.

65.     Defendants were deliberately indifferent to Plaintiff's safety.

66.     Defendants conduct subjected Mr. Wallace to atypical and significant hardships, in relation to the ordinary conditions for a pre-trial detainee.

67.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

**COUNT II**
**CIVIL RIGHTS ACT [42 U.S.C. § 1983]**
**Fourth Amendment**

68.     Every paragraph not falling under this Count is incorporated herein by reference.

69.     At no time relevant to this action was Plaintiff a threat to the safety of any Defendant, himself, or any other person.

70.     At the time of the events complained of herein, Plaintiff had a clearly established right to be secure in his person and free from summary punishment.

71.     Any reasonable correctional officer or administrator thereof knew or should have known of these rights at the time of the complained of conduct.

72.     Defendants acted unreasonably in their conduct towards Plaintiff, subjecting him to summary punishment and violating his due process rights.

73.     Defendants were the direct cause of the constitutional violations suffered by Mr. Wallace, which caused serious injury and significant pain and suffering.

74.     Defendants utilized excessive force against Plaintiff, including striking him numerous times with closed fists, with no cause or legal justification.

75.     The acts or omissions of Defendants were the direct causes of Plaintiff's resulting injuries.

76.     The individual Defendants acted in concert and joint action with one another to intentionally deprive Plaintiff of his constitutional rights.

77.     At all relevant times herein, all Defendants were acting pursuant to custom, policy, decision, ordinance, widespread habit, practice, and usage in their actions against Plaintiff.

78.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

## COUNT III
## CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Eighth Amendment

79.     Every paragraph not falling under this Count is incorporated herein by reference.

80.     As alleged herein, Defendants maintained a policy and practice of denying rights to detainees within MCDC.

81.     Defendants' usage of excessive force and other actions were done in complete disregard for the medical and safety needs of Plaintiff.

82.     Plaintiff was detained under conditions which posed a substantial risk of harm.

83.     Plaintiff was deprived of the minimal civilized measure of life's necessities by Defendants, who deliberately placed Plaintiff in substantial risk of serious harm by utilizing excessive force against him.

84.     Defendants were deliberately indifferent o Plaintiff's serious medical needs.

85.     By utilizing excessive force against Plaintiff, Defendants deprived him of his right to be free from cruel and unusual punishment.

86.     Defendants engaged in the conduct described herein in bad faith, maliciously, willfully, and/or in reckless disregard of Plaintiff's rights.

87.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer

physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

**COUNT IV**
**Maryland Declaration of Rights Articles 16, 24, 25, 26**

88.     Every paragraph not falling under this Count is incorporated herein by reference.

89.     At all times relevant to this complaint, Officer Myers and Officer Metz were acting under the color of state law and authority, within the scope of their employment as correctional officers employed by Defendant County.

90.     The Maryland Declaration of Rights provides numerous rights protecting persons from deprivations of their liberty and the use of excessive force, including, but not limited to:

        a.     Freedom from imprisonment and seizure of freehold, liberty, and privilege without due process, and without judgment of peers;

        b.     Freedom from the deprivation of liberty without due process of the law, and without judgment of peers;

        c.     Freedom from the abuse of power by law enforcement and correctional officers;

        d.     Freedom from summary punishment;

        e.     Freedom from cruel and unusual punishment; and

        f.     Freedom from excessive force.

91.     The Maryland Declaration of Rights forbids the use of excessive and unnecessary force by correctional officers. The right to be free from excessive force was denied to Plaintiff when the Defendants used excessive force against Plaintiff without legal cause, excuse, or justification.

92.     At no time relevant to this action was Plaintiff a threat to the safety of any correctional officer, himself, or any other person.

93.     Defendants acted unreasonably in their conduct towards Plaintiff, subjecting him to excessive force. Defendants knew, or should have known, that their conduct violated Plaintiff's right to freedom from excessive force, as any reasonable agent or employee of Defendant County knew, or should have known, of these rights at the time relevant to Plaintiff's complaint.

94.     Defendants' actions were the direct cause of the excessive force suffered by Plaintiff, which caused him severe injury, including, but not limited to, severe headaches, generalized pain in his face and head, periorbital bruising and edema and a large contusion, and emotional pain and suffering.

95.     The physical injuries suffered by Plaintiff, and the physical pain and suffering that Plaintiff continues to suffer, constitute unnecessary and wanton infliction of pain prohibited by the Maryland Declaration of Rights as cruel and unusual punishment, for which there was no penological justification.

96.     The conduct of Defendants, as well as the failure of Defendant County to properly train, supervise, and discipline the individual Defendants, and put in place effective policies and procedures to prevent correctional officers from unconstitutionally inflicting cruel and unusual punishment on inmates, demonstrates a deliberate indifference to the conditions that resulted in Plaintiff's injuries.

97.     Defendants acted unreasonably in their conduct towards Plaintiff, subjecting him to cruel and unusual punishment without any penological justification. Defendants knew, or should have known, that their conduct violated Plaintiff's rights, as any reasonable agent or employee of Defendant County knew, or should have known, of these rights at the time relevant to Plaintiff's complaint.

98.     Defendants were acting under the color of State law, in their capacity and authority as correctional officers. As such, Defendant County is liable for the individual Defendants' conduct.

99.     In the alternative, Defendants' unconstitutional deprivation of Plaintiff's liberty and right to freedom from excessive force without justification or probable cause constitutes gross negligence, and the individual Defendants are personally liable for their own conduct.

100.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

### COUNT V – AGAINST DEFENDANTS SIDNEY AND SHABELSKI
### Battery

101.    Every paragraph not falling under this Count is incorporated herein by reference.

102.   Plaintiff has a protected property and liberty interest in his freedom, his ability to exercise free will and domain over his person, and his ability to be free from unlawful and excessive force.

103.   Defendant Shabelski deprived Plaintiff of his interest to be free from excessive force and battery by forcibly restraining Plaintiff, slamming Plaintiff into a wall, taking Plaintiff to the ground, lying on top of Plaintiff with his arm over Plaintiff's neck, and punching Plaintiff repeatedly with a closed fist.

104.   Defendant Sidney deprived Plaintiff of his interest to be free from excessive force and battery by forcibly restraining Plaintiff and punching Plaintiff repeatedly with a closed fist.

105.   Defendant Shabelski and Defendant Sidney's use of excessive force and battery, including punching Plaintiff repeatedly in the face and head with closed fists, constituted an unpermitted application of trauma on Plaintiff's body.

106.   Defendant Shabelski and Defendant Sidney had no rational reason to believe that there was any justification for the excessive use of force against Plaintiff, as Plaintiff was simply asking to use the phone for a longer period of time.

107.   At no time relevant to this action was Plaintiff a threat to the safety of Defendant Shabelski, Defendant Sidney, any other individual Defendant, Plaintiff himself, or any other person.

108.   Defendant Shabelski and Defendant Sidney's use of excessive force was done without cause or justification, demonstrating ill will, improper motivation, and/or evil motive.

109.   As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer

physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

**COUNT VI**
**Gross Negligence**

110.    Every paragraph not falling under this Count is incorporated herein by reference.

111.    When Defendants utilized excessive force against Plaintiff, they had no constitutional or valid basis to do so, as Plaintiff had done nothing wrong and was simply trying to use the phone in the commitment tank to secure payment of his bail bond.

112.    When Defendants inflicted cruel and unusual punishment on Plaintiff, including punishment in the form of unnecessary and wanton infliction of pain, they had no constitutional or valid basis to do so, because there was no penological justification to justify the infliction of any punishment on Plaintiff.

113.    In using excessive force and inflicting cruel and unusual punishment on Plaintiff, Defendants violated Plaintiff's rights under the Maryland Declaration of Rights.

114.    Defendants had a manifest duty to abide by the constitutional limits of their authority as correctional officers.

115.    Defendants violated that duty to abide by the constitutional limits of their authority as correctional officers by violating Plaintiff's rights under the Maryland Declaration of Rights.

116.    Defendants could not have reasonably believed that they were within their constitutional authority to use excessive force and inflict cruel and unusual punishment on Plaintiff, as Plaintiff had done nothing wrong and was simply trying to use the phone in the commitment tank to secure payment of his bail bond. Plaintiff was not a threat to any officer, himself, or any other person. Accordingly, Defendants' use of excessive force against Plaintiff and infliction of cruel and unusual punishment constituted acts so utterly indifferent to the rights of Plaintiff that Defendants acted as if those constitutional rights did not exist.

117.    In the alternative, Defendants' use of excessive force against Plaintiff and infliction of cruel and unusual punishment constituted an intentional failure to perform a manifest duty and abide by the constitutional limits of policing in reckless disregard of the consequences as affecting the life of another, and evinced a thoughtless disregard of the consequences to Plaintiff's life without the exertion of any effort to avoid those consequences.

118.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

## COUNT VI
### Negligence

119.    Every paragraph not falling under this Count is incorporated herein by reference.

120.    When Defendants utilized excessive force against Plaintiff, they had no constitutional or valid basis to do so, as Plaintiff had done nothing wrong and was simply trying to use the phone in the commitment tank to secure payment of his bail bond.

121.    When Defendants inflicted cruel and unusual punishment on Plaintiff, including punishment in the form of unnecessary and wanton infliction of pain, they had no constitutional or valid basis to do so, because there was no penological justification to justify the infliction of any punishment on Plaintiff.

122.    In using excessive force and inflicting cruel and unusual punishment on Plaintiff, Defendants violated Plaintiff's rights under the Maryland Declaration of Rights.

123.    Defendants had a manifest duty to abide by the constitutional limits of their authority as correctional officers.

124.    Defendants violated that duty to abide by the constitutional limits of their authority as correctional officers by violating Plaintiff's rights under the Maryland Declaration of Rights.

125.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

## COUNT VII – AGAINST DEFENDANT COUNTY
### Negligent Training, Supervision, and Retention

126.    Every paragraph not falling under this Count is incorporated herein by reference.

127.    Defendant County had a duty to provide care, safekeeping, and protection to all persons detained within the correctional system for Montgomery County, Maryland.

128.    Defendant County had a duty to ensure that correctional officers were trained to conduct their duties within constitutional bounds, and a duty to discipline and/or fire officers who failed to conduct their duties in a constitutional manner.

129.    Defendant County breached its duty to ensure that Defendants were trained in the constitutional limits of their authority, which led Defendants to believe that they could unconstitutionally use excessive force against Plaintiff without cause and subject Plaintiff to cruel and unusual punishment.

130.    Defendant County further failed to properly supervise and discipline Defendants, to ensure that Defendants did not use excessive force against inmates or inflict cruel and unusual punishment on inmates.

131.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as this case requires, including, but not limited to, declaratory and injunctive relief declaring the conduct herein unlawful and unconstitutional and enjoining future lawful and unconstitutional conduct.

## JURY TRIAL DEMAND

The Plaintiff respectfully demands trial by jury.

Respectfully submitted,

HANSEL LAW, PC

*/s/ Cary Hansel*
Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606

*Counsel for Plaintiff*